COHN (UNITED STATES v.). See Cases Nos. 14,827 and 14,828.

## Case No. 2,969.

### COHN v. UNITED STATES CORSET CO. et al.

[12 Blatchf. 225;[1] 1 Ban. & A. 340; 6 O. G. 259.]

Circuit Court, S. D. New York.   June 20, 1874.[2]

PATENTS—"CORSETS"—VALIDITY—PRIOR PUBLICATION.

1. The letters patent granted to Moritz Cohn, April 15th, 1873 [numbered 137,893], for an "improvement in corsets," the claim of which is "A corset having the pockets for the reception of the bones formed in the weaving, and varying in length relatively to each other, as desired, substantially in the manner and for the purpose set forth," are void, because the invention set forth therein was previously described in a publication printed in England, being a provisional specification left by John Henry Johnson at the office of the commissioner of patents, with his petition, on the 20th of January, 1854.

2. A prior printed publication, in order to invalidate a subsequent patent, must describe the thing claimed by such patent, and must do so in a manner so distinct and clear as to leave no reasonable doubt that the thing described is the same.

3. The patent to Cohn claims, that the corset, to be his corset, must not only have the pockets stopped and finished off in the weaving, but must have them varying in length relatively to each other, as desired, each pocket starting from one edge of the fabric and running towards the other, but stopping short of it at a point predetermined as the point at which the end of the bone to be inserted in that pocket is to be located, according to the shape to be given to the corset. Johnson's provisional specification describes the same features in a corset.

4. The fact that a corset made in pursuance of Johnson's description existed, is sufficiently shown by such description, and it is not necessary to show otherwise the existence or use of such a corset.

5. Nor is it necessary that Johnson's description should show how the apparatus for weaving the corset should operate, to produce the features he describes as pertaining to his woven corset.

6. If that were held to be a defect in Johnson's description, the specification of Cohn's patent would be defective in the same respect, in not stating the arrangement of machinery necessary to produce the features of his corset.

[See note at end of case.]

[In equity. Bill by Moritz Cohn against the United States Corset Company for relief for infringement of letters patent No. 137,893, granted to complainant April 15, 1873, for an improvement in corsets.]

Charles M. Keller, for plaintiff.

George Gifford and William C. Witter, for defendants.

BLATCHFORD, District Judge.   This suit is brought on letters patent granted to the plaintiff, April 15th, 1873, for an "improve-

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirmed by Supreme Court in Cohn v. U. S. Corset Co., 93 U. S. 366.]

ment in corsets." The specification of the patent says: "Previous to my invention it has been customary, in the manufacture of corsets, to weave the material with pocket-like openings or passages running through from edge to edge, or all stopped and finished off at a uniform distance from the edge, and adapted to receive the bones, which are inserted to stay the woven fabric, and which serve as braces to give shape to and support the figure of the wearer. This method of manufacturing the corsets necessarily involves a great deal of hand labor, and, consequently, expense, in stitching up the ends, where they are woven with pockets running through from edge to edge, to hold the bones in place, or else the upper ends of the bones are necessarily all located at a uniform distance from the edge, resulting in a less perfectly shaped corset than is produced by following out my invention. I propose, by my invention, to overcome the objections just named, and produce a corset in which the location or position of the bones endwise shall be predetermined with the accuracy of the jacquard in the process of weaving the corset-stuff or material, while I, at the same time, effect a great saving of labor and expense, and give a more perfect shape. My invention has for its main object, therefore, not only the production of a better article, but, also, a reduction in the cost of manufacture; and, to these ends, my invention consists in having the pocket-like openings or passages, into which the bones are put, closed up near the end, at that point at which it is designed to have the end of each located, as will be hereinafter more fully set forth." The drawings then represent two corsets. One is made according to the mode of manufacture stated to have been theretofore most generally practised, that is, with the bones secured in place endwise in the pockets by stitching, after the insertion of the bone, so as to retain the bone endwise, by closing up the pocket, it being, when woven, a passage running through from edge to edge. "This," the specification says, "is in accordance with or illustrates the mode of manufacture originally practised, and only departed from prior to my invention, as heretofore explained." The other corset represented in the drawings is one made according to the plan of the patentee. The specification states, that, instead of having the woven fabric of the corset made with pocket-like openings or passages running through from edge to edge, or up to a uniform distance from the edge, the patentee proposes to have such woven fabric "woven with pockets or passages which extend from one edge of the fabric toward the other, but stop short of the latter at such point or locality as is predetermined for the location of the end of each bone, according to the design or shape to be given to the corset, as shown." It also states, that the fabric is woven with the pockets extending from one

edge of the fabric towards the other edge as far as certain points which are not at uniform distances from either edge; that from those points out to the latter edge the fabric is woven solid or without any passages; that the bones are made of the proper length, and are inserted at the open ends of the pockets; and that, after their insertion, the bones are pushed home to the bottoms of their respective pockets, and the mouths or open ends of the pockets are then closed up by the stitching and binding of the edge, and the perfect retention of the bones is thus effected. The specification proceeds: "It will be understood, that, by forming the corset as described, with pockets closed at one end, and weaving in such pockets of varying lengths, I am enabled to determine, in the manufacture of the corset-fabric, the precise points to which the subsequently inserted bones shall extend, and thus pattern any number of corsets exactly alike, and to the most desirable model. Corsets made according to my improved plan, it will be seen, can be made to a perfect and regular pattern, will be more desirable in appearance, and can be produced at less cost than those made according to the mode of manufacture practised previous to my invention. I am aware of, and do not claim, a woven corset with the pockets stopped and finished off at a uniform distance from the edge. I am also aware of, and do not claim, a hand-made corset with pockets of varying lengths stitched on." The claim is in these words: "A corset having the pockets for the reception of the bones formed in the weaving, and varying in length relatively to each other, as desired, substantially in the manner and for the purpose set forth."

The application for the patent was made on the 30th of January, 1873. In the specification originally presented there was no recognition of the fact, that, prior to the plaintiff's invention, it had been customary, in the manufacture of corsets, to weave the material with pocket-like openings or passages stopped and finished off at a uniform distance from the edge; and it was stated, in such specification, that it had always been necessary to insert the bones in pocket-like openings or passages running through from edge to edge, and then to secure each bone endwise by sewing. Such specification proceeded on the assertion that the plaintiff was the first person who stopped or finished off by weaving the bone pockets which had before been woven to run through from edge to edge, and the first person who thus dispensed with the operation of fastening endwise by stitching the bones in such bone-pockets, and the first person who, by the process of weaving, closed up such bone-pockets at the place where the end of the inserted bone was to be located. The claim applied for, on such specification, was a claim to "a corset woven with the pockets for the bones closed at one end, substantially as and for

the purpose set forth." On the 26th of February, 1873, the application was rejected, on the ground that it had been anticipated by what was stated to be "English patent No. 143, of 1854." This reference was to a "provisional specification left by John Henry Johnson at the office of the commissioners of patents, with his petition, on the 20th January, 1854," which says: "This invention received provisional protection, but notice to proceed with the application for letters patent was not given within the time prescribed by the act." The invention is called, in such provisional specification, an "invention for improvements in the manufacture of stays or corsets," and is therein stated to have been communicated to Johnson by Adolphe Georges Geresme, of Paris, in the empire of France, manufacturer. The entire text of such provisional specification is in these words: "This invention relates to the manufacture of what are known as woven corsets, and consists in the employment of the jacquards in the loom, one of which effects the shape or contour of the corset, and the other the formation of the double portions or slots for the introduction of the whale-bones. These slots or double portions are made simultaneously with the single parts of the corset, and, in place of being terminated in a point, they are finished square off, and at any required length in the corset, instead of always running the entire length, as is usually the case in woven corsets. When the corset is taken from the loom, the whale-bones are inserted into these cases, and the borders are formed, thus completing the article, which contains all the elegance and graceful contour of sewn corsets made by manual labor." On the 12th of March, 1873, amendments were made in the specification and claim, but none which limited the scope claimed for the invention. On the 15th of March, 1873, the application was again rejected. On the 25th of March, 1873, the claim was amended so as to read as it is in the patent issued, but the application was again rejected March 29th, 1873. On the 10th of April, 1873, the specification and claim which are found in the patent issued were presented, and the patent was, on the next day, ordered to issue. In an argument addressed to the patent office, on behalf of the patentee, on the 12th of March, 1873, in reference to what appears in the provisional specification of Johnson, it is said: "Prior to Cohn's invention, the material for corsets had been woven into the required shape, with the gussets, &c., by the action of the jacquard of the loom, and the openings or pockets for the bones were woven through from selvage to selvage of the stuff, each pocket terminating in a sort of point. As the selvages were cut off afterwards, the pockets were, of course, left open at the ends, necessitating the adjustment of the bones by hand, and their securement in the proper position endwise by sewing. It is a fact known to all those in the corset trade, that all imported corsets are, and have for years been, woven after this fashion. No one in this country has ever seen a corset with pockets woven of different lengths, to determine the position of the bones endwise, and hold the bones in, until the making of such corsets by Cohn; and the presumption is, that no such corsets as just named were ever made abroad. Now, in view of these facts, the fair presumption is, that what the English patent cited alludes to and means is simply a woven corset, having the pockets, in lieu of closed pointedly near the selvage, in the old-fashioned way, stopped off square, at any required distance from the selvage, but not at different distances in one corset, for the purpose of regulating the position endwise of a number of bones of different lengths, and thus determining the design or figure of the corset. At any rate, no such thing as a corset with its pockets woven of various lengths is described in this very brief English specification, nor has any such corset ever come here from abroad. As it is necessary, in a fine corset, to have the bones of different lengths, and to have the ends of the bones placed at certain points in the pockets, it follows, that, in a corset woven as proposed in the English patent, with all the pockets one length, the adjustment by hand, and securing with stitching, of many of the bones, would be necessary, and hence, by so weaving the corset, (with square bottomed pockets all the same length,) no particular advantage would be gained, and it is reasonable from this to conclude, that, for these reasons, what the English patentee proposed has never gone into practice abroad and been imported here. All the surrounding facts and circumstances, to say the least, raise a very strong doubt as to whether this English specification really describes, or its author ever contemplated, the invention of Cohn, and, in view of such doubt, the applicant is entitled to his claim." In pursuance of the views set forth in this argument, the specification finally presented, and which is the one annexed to the patent, manifestly refers to the Johnson invention, in saying that, in weaving the material, the pocket-like openings or passages had before been stopped and finished off at a uniform distance from the edge, and then goes on to say that the woven fabric of the patentee's corset, in lieu of being made with pocket-like openings or passages running through from edge to edge, or up to a uniform distance from the edge, is to be "woven with pockets or passages which extend from one edge of the fabric toward the other, but stop short of the latter at such point or locality as is predetermined for the location of the end of each bone, according to the design or shape to be given to the corset, as shown," and then disclaims "a woven corset with the pockets stopped and finished off at a uniform distance from the edge," and limits the claim to pockets

"formed in the weaving, and varying in length relatively to each other, as desired."

The principal defence relied on in this case is, that the invention of the patentee is found in the Johnson provisional specification, regarded not as a patent, but as a publication printed in England prior to the patentee's invention. The Johnson specification, in order to be sufficient to invalidate the plaintiff's patent, must describe the thing which the plaintiff's patent claims, and must do so in a manner so distinct and clear as to leave no reasonable doubt that the thing described is the same. The 61st section of the act of July 8, 1870 (16 Stat. 208), provides, that where it is set up, as special matter of defence to a suit for the infringement of a patent, that the invention covered by it had been previously described in some printed publication, and such special matter is found for the defendant, judgment shall be rendered for the defendant. Therefore, this defence must be established affirmatively by the defendant, in order to be found for him, the patent having been issued and standing until overthrown.

The plaintiff's patent claims, distinctly, that the corset, to be the plaintiff's corset, must not only have the pockets stopped and finished off in the weaving, but must have them varying in length relatively to each other, as desired, each pocket starting from one edge of the fabric and running towards the other, but stopping short of it, at a point predetermined as the point at which the end of the bone to be inserted in that pocket is to be located, according to the shape to be given to the corset. Now, while the Johnson specification or description is brief, it sets forth distinctly what it purports to set forth in regard to a woven corset. It sets forth, in that respect, that the shape or contour of the corset is to be given by weaving; that the double portions or slots for the introduction of the whalebones are to be formed by weaving, and are to be finished square off, in place of being terminated in a point, and are to be finished off at any required length in the corset, instead of always running the entire length, as is usually the case in woven corsets; that, when the corset is taken from the loom, the article is completed by inserting the whalebones into these cases, and forming the borders; and that the completed article contains all the elegance and graceful contour of sewn corsets made by manual labor. The matter in dispute is, as to whether Johnson describes pockets varying in length relatively to each other, and each pocket stopping at a point predetermined, according to the shape designed for the corset, as the point where the end of the bone to be inserted in that pocket is to be located. The determination of the point where the end of the bone and the end of the pocket are to be is governed, according to the plaintiff's specification, solely by the shape to be given to the corset. No particu-

lar length of pocket, and no particular location of the end of any bone, are set forth, in the plaintiff's specification, as giving, or conducing to give, any particular shape to the corset. That whole matter rests in the will of the manufacturer. All that the plaintiff's specification really says is, that the patentee intends to stop off his pockets, by weaving, at any required point, and thus make them of any required length, and that the shape to be given to the corset will demand that the pockets be stopped off at definite points, to enable the bones to be the proper bones for such shape, and that this will require that the pockets in the corset shall vary in length relatively to each other. It was well known that the shape to be given to a woven corset demanded that the pockets should be stopped off at definite points, to enable the bones to be the proper bones for such shape; and it was well known that this required that the pockets in a corset should vary in length relatively to each other. This was known before the date of Johnson's specification; and Johnson, in that specification, speaks of the elegance and graceful contour of his corset, necessarily implying that his pockets and bones are of proper lengths to give such elegance and grace of contour, and not of such lengths as to defeat such a result. Therefore, in reality, all that the plaintiff says, in his specification, is, that he intends to stop off his pockets, by weaving, at any required point, and thus make them of any required length. Johnson stops off his pockets, by weaving, at any required length in the corset. There is no just foundation for the idea that Johnson describes stopping off the pockets at a uniform length. It was a part of the history of the art, at the date of Johnson's specification, that the bones in a corset must be of varying lengths relatively to each other, in order to suit the shape of the wearer and give any grace of contour, and, consequently, that the pockets containing the bones must be stopped off at varying heights in the same corset. No person desiring to make a salable corset, much more, one described by Johnson as containing "elegance and graceful contour," would, at the date of Johnson's specification, have made the bones or the pockets of uniform length. Such a corset would not be a corset of proper shape, or, in the language of one of the witnesses, would be a corset without a shape. When the pockets, prior to Johnson's specification, were woven the entire length, they were stopped off by sewing, at varying heights in the same corset, according to the varying lengths assigned to the various bones, to produce the predetermined shape of the corset. When, therefore, in view of such state of the art, Johnson directs the pockets to be finished, by weaving, at any required length in the corset, he necessarily conveys the idea that the weaving can be employed to stop off the several pockets at the several places where they had before been stopped off by sewing. In

view of what there is in Johnson's specification, the plaintiff's patent conveys no new idea. It says, that each pocket is to be stopped, by weaving at the place where the end of the bone which is to be inserted in such pocket is to be, and that the ends of the bones are not all to be at a uniform distance from the openings of the pockets. Johnson says the same thing, in saying that the slots are to be finished at any required length in the corset, when his language is read in view of the state of the art in January, 1854.

It is urged, for the plaintiff, that there is no evidence that such a corset as the plaintiff's ever existed, made in pursuance of Johnson's description. But it must be assumed, from Johnson's language, that such a corset as he describes existed, for he speaks of it as a corset which contains elegance and graceful contour. Moreover, if the description by Johnson is a sufficient description of the plaintiff's corset to show its structure in the particulars covered by the claim of the plaintiff's patent, it is not necessary to show otherwise the existence or use of the corset described by Johnson.

It is also urged, that Johnson does not sufficiently describe how the two jacquards are to be arranged, so as to produce the features he describes as pertaining to his woven corset. It is not necessary this should have been described. The plaintiff, in his specification, merely points out the features which exist in his woven corset, but does not describe how the jacquard or the loom is to produce those features. It must be assumed that Johnson and Geresme had employed two jacquards to produce the features Johnson describes—one jacquard to effect the shape or contour of the corset, and the other to form the slots. Johnson says, that the slots "are made" simultaneously with the single parts of the corset, and "are finished" square off, that the whalebones "are inserted" into these cases, and the borders "are formed," and that the article thus completed "contains" all the elegance and graceful contour of sewn corsets made by manual labor. The plaintiff makes no claim, in his patent, to any invention in connection with the loom, or the jacquard, or the particular shape of the corset. Therefore, he describes nothing in those respects. He describes, and needed to describe, only the features of his corset, as an article. So, we are to look, in Johnson's specification, only for a description of like features in a woven corset, and not for any description of any means for producing those features. It might, with as much force, be urged, that the plaintiff's specification does not sufficiently describe his invention, because it does not state how the loom and the jacquard are to be arranged to produce the described features of the corset, but merely speaks of using the jacquard in a loom. To this suggestion it is replied, that any weaver would know how to do that, when told by the plaintiff what features

were to exist in the corset woven; but that no weaver would have known how to arrange two jacquards to produce like features in the corset woven, when told by Johnson that such features were to exist in the corset woven. Yet the plaintiff shows, by the testimony, that, after he had determined at what points he wished the pockets to be stopped off, to give the required shape to the corset, he tried in vain, for some time, to make his loom and jacquard so work as to stop off the pockets at such points; and that it finally required the employment of an experienced weaver, and a special arrangement of cords, needles and cards, to produce the desired result. But, there is nothing of this in his specification. If Johnson's description is insufficient in this respect, the plaintiff's description is also insufficient.

It is also insisted, that the defendants must prove that, at the date of Johnson's description, a loom with two jacquards, suitable to produce the features required in the corset woven, was known to the arts; and that none such was known to Johnson, because his description declares that the invention consists in the employment of two jacquards, with the functions assigned to them respectively. But, if such employment of two jacquards was invented by Geresme, it was known to him, and the description shows that it had been used, and that the described corset had been made by means of it. It would be more proper, therefore, to say, that it is for the plaintiff to show that such employment of two jacquards was not known to Geresme. No such fact has been shown. On the contrary the defendants have proved that they have caused corsets to be woven with the pockets stopped off by weaving, and of varying lengths in the same corset, by the employment of two jacquards in the loom, one affecting the shape or contour of the corset and the other the formation of the pockets, and the pockets being made simultaneously with the single parts of the corset, and being finished square off.

If the plaintiff has made an invention, it is in the means of producing the features he describes as belonging to the corset described, and it is not the corset itself with those features. Such a corset is described by Johnson.

The above views are fatal to the validity of the patent. But I ought to say, that the defendants have not established a forfeiture by the patentee of his rights, as set up in the answer, by his having sold his corset and allowed it to be used for more than two years before he applied for his patent; nor the defence of a prior knowledge and use of the corset by the Convex Weaving Company.

The bill must be dismissed, with costs.

[NOTE. On complainant's appeal the supreme court affirmed the decree herein, on the ground that the invention patented to the complainant was clearly described in 1854 in the printed publication of the Johnson (Geresme)

provisional specification, and the patent was therefore invalid. Opinion by Mr. Justice Strong. Cohn v. U. S. Corset Co., 93 U. S. 366.]