46 C.C.P.A. (Patents).

### Matter of the Application of Julian ROGOFF.

### Patent Appeal No. 6385.

United States Court of Customs and Patent Appeals.

Dec. 15, 1958.

Ernest Fanwick, Norwalk, Conn. (Robert I. Dennison, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and WORLEY, RICH, and MARTIN, Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 2, 3, and 4 of appellant's application, No. 467,665, filed November 8, 1954, for the reissue of patent No. 2,429,585, granted October 21, 1947, for a pressed insulated connector.

Claims 2 and 4 are representative of the appealed claims and read:

"2. A connector for use in a crimped joint comprising a cylindrically shaped metal body portion having an open end for receiving a conductor therein, an insulating cover thereon, said insulating cover having the physical properties of permitting an indenting tool to be applied externally to the insulation and causing the metal body underneath to be indented in the form of a recess to a conductor therein, and of substantially retaining the shape of the recess in the insulation after the tool has been withdrawn.

"4. A connector for use in a crimped joint comprising a cylindrically shaped metal body portion having an open end for receiving a conductor therein; an insulating cover thereon, said insulating cover having the physical properties of permitting an indenting tool to be applied externally to the insulation and causing the metal body underneath to be indented in the form of a recess to a conductor therein and of initially retaining the approximate shape of the recess in the insulation after the tool has been withdrawn but having a tendency to return, at least to some extent, to the shape it had prior to indenting."

The single reference relied on is:

Watts   Re. 23,688   July 21, 1953.

The following statement as to the history of appellant's application, so far as pertinent to the instant rejection, is found in the board's decision:

"Seven days after the issuance of appellant's patent No. 2,429,585, the single claim thereof was copied by the party Watts in a reissue application of the Watts patent No. 2,410,321, which had issued on October 29, 1946, as claim 5 of the reissue application, together with claims 6 and 7, which were patterned after the patent claim, for purpose of interference. After due proceedings, the Primary Examiner finally rejected claims 5, 6 and 7 of the Watts reissue application on the ground that Watts did not disclose the subject matter of these claims. In a decision upon appeal from the final rejection, the Board of Appeals reversed the Primary Examiner and held that the party Watts did disclose the subject matter of the appealed claims. An interference No. 83,667 involving appellant's patent No. 2,429,585 and Watts reissue application No. 782,469 was instituted and priority was granted to Rogoff, the junior party, on the grounds that the sleeve of insulation disclosed in the original Watts application did not respond to the count in issue. In other words, the Board of Interference Examiners held that the party Watts did not disclose the subject matter of the Rogoff patent claim. Subsequent thereto, in proceedings before the Primary Examiner, claims 6 and 7 and additional claim 8 of the Watts reissue application were allowed to Watts and issued in the Watts reissue patent as claims 5, 6 and 7 thereof on July 21, 1953. On November 8, 1954, nearly sixteen months after the issue of the Watts reissue patent, the party Rogoff filed this reissue application of his patent No. 2,429,585, wherein he copied claims 5, 6 and 7 of the Watts reissue patent as claims 2, 3 and 4 of his reissue application for the purpose of interference."

The primary basis of the rejection is that the appealed claims are broader than the single claim of appellant's patent, No. 2,429,585, and that, since the reissue application was not filed within two years after that patent issued, the allowance of the claims is barred by Title 35, section 251 of the United States Code, in which is found the following language:

"No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent."

That provision contains no exceptions or qualifications as to time or extent of enlargement. The sole issue, therefore, is whether the claims on appeal enlarge, i. e., broaden, the patent claim.

█ It is well settled that a claim is broadened, so far as the question of right to reissue is concerned, if it is so changed as to bring within its scope any structure which was not within the scope of the original claim. In other words, a claim is broadened if it is broader in any respect than the original claim, even though it may be narrowed in other respects. Fox Typewriter Co. v. Corona Typewriter Co., 6 Cir., 282 F. 502; In

re Bostwick, 102 F.2d 886, 26 C.C.P.A., Patents, 1117; Schenk v. United Aircraft Corp., D.C., 43 F.Supp. 679; and Mercoid Corp. v. Milwaukee Gas Specialty Co., D.C., 33 F.Supp. 681.

Appellant's patent and reissue application disclose a device adapted to electrically connect two or more conductors and comprising a deformable metal ring or sleeve surrounded by an insulating cover. When a connection is to be made the conductors to be joined are inserted in the metal sleeve and the sleeve and its insulating covering are then compressed so that they are indented and forced into intimate contact with the conductors. It is stated in the patent that the insulating cover is substantially non-elastic and that it retains its shape after the indenting tool is withdrawn.

The single claim of the patent is as follows:

"A connector for use in a crimped joint comprising a cylindrically shaped metal body portion having an open end for receiving a conductor therein; a substantially non-elastic insulating cover thereon, said insulating cover having the physical properties of permitting an indenting tool to be applied externally to the insulation and causing the metal body underneath to be indented in the form of a recess to a conductor therein, and of retaining the shape of the recess in the insulation after the tool has been withdrawn."

Appealed claims 2 and 3 follow closely the language of the patent claim, but omit the statement that the insulating cover is "substantially non-elastic." Moreover, whereas the patent claim states that the material of the cover has the property of retaining its shape after the tool is withdrawn, claims 2 and 3 merely state that it has the property of *substantially* retaining its shape.

■ The board found, and we agree, that any insulating material which would retain its form as specified in the patent claim would necessarily be "substantially non-elastic," thus the omission of that

language from the appealed claims does not broaden their scope. The board also found, however, that insertion of the word "substantially" before the words "retaining the shape of the recess," in appealed claims 2 and 3 does broaden them within the meaning of 35 U.S.C. § 251.

The significance of the word "substantially" in a claim was considered at length by this court in Robins v. Wettlaufer, 81 F.2d 882, 886, 23 C.C.P.A., Patents, 952, and much of that discussion is pertinent here. The expression there under consideration was "a drive shaft substantially coincident with the center of gravity of the said frame." It was held that the quoted language was satisfied by a device in which the drive shaft was spaced by more than seven inches from the center of gravity of the frame and that "it cannot successfully be contended that 'substantially coincident with' or 'close to' means 'coincident with' or 'at.'" It is clear, therefore, that the court was of the opinion that "substantially coincident with" was broad enough to embrace structures not embraced by "coincident with."

Similarly, in Hazeltine Corp. v. A. H. Grebe & Co., Inc., D.C., 21 F.2d 643, 645, it was held that "a coefficient of coupling substantially equal to unity" did not require that the coefficient be as close to unity as physically possible, but permitted some degree of variation, and that the word "substantially" could not be ignored in determining the scope of the claim.

Appellant contends that since claims 2 and 3 originated as claims 6 and 7 in the Watts reissue application, they must be construed in light of the record of that application, and that such record indicates that, when those claims were presented, they were considered by Watts to be of the same scope as claim 1 of appellant's patent in all material respects. In that connection appellant also notes that the examiner at one time held that claims 2 and 3 did not differ from the claim of appellant's patent "in any material respect."

However, the record of the Watts reissue application also shows that, after the interference between appellant's patent and that application, Watts argued that "Claims 6 and 7 are, according to our understanding, broader than claim 5 [the claim of appellant's patent] * * It is accordingly beyond dispute that claims 6 and 7 are not to the same subject matter as claim 5 but are broader in the very respect on which the Board of Interference Examiners based its decision." The examiner at first declined to accept that contention but, after further extensive argument along the same line, he was evidently convinced, since he allowed the claims, which action could have been properly taken only on the assumption that they were materially different from the claim of appellant's patent.

Since it thus appears that appealed claims 2 and 3 were finally allowed in the Watts reissue application on the ground that they are broader than the claim of appellant's patent, it is evident that the history of that application, considered as a whole, presents an argument against, rather than for, the contention advanced by appellant here.

■ For the reasons given we agree with the board that claims 2 and 3 are broader than the claim of appellant's patent.

Claim 4 differs from the claim of appellant's patent not only in that it states that the insulating cover has the property of initially retaining its approximate shape, whereas the patent claim omits the words "initially" and "approximately," but also in that claim 4 contains a statement that the cover has "a tendency to return, at least to some extent, to the shape it had prior to indenting," which statment is not found in the patent claim. In view of these differences claim 4 was properly held to be broader than the patent claim. The patent claim is limited to a cover material which retains its indented form indefinitely, while claim 4 permits, if it does not actually require the cover to return to some extent toward its original form. It follows that claim 4 embraces structures not included within the patent claim and is, therefore, broader than that claim for reasons similar to those given above in connection with appealed claims 2 and 3.

■ A further ground of rejection advanced by the examiner was that if, as contended by appellant, the appealed claims were not broader than, but were of the same scope as the patent claim, then there was no legal basis for obtaining them by reissue of the patent. While that ground was not discussed by the board, it is to be considered affirmed and is properly before us since the board entered a general affirmance of the examiner's decision. In re Wahl, 132 F.2d 323, 30 C.C.P.A., Patents, 719; In re Lilienfeld, 67 F.2d 920, 21 C.C.P.A., Patents, 792.

Title 35, section 251 of the United States Code also provides for the reissue of a patent when it is "deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent." There is no contention here that the specification or drawing of appellant's patent is defective nor that he claims in the patent more than he had a right to claim as new. The only remaining ground for reissue, therefore, must be that he claimed *less* than he had a right to claim as new, but if that were the case, the only appropriate remedy would be a reissue with *broadened* claims.

■ The sole reason for which appellant seeks a reissue is to include appealed claims 2, 3, and 4. If, as he appears to allege, those claims do not differ materially in scope from the claim of the patent, then there is no evidence that he did not claim in the patent as issued all that he had a right to claim as new, and hence there is no statutory justification for a reissue. In other words, appellant is on the horns of a dilemma. Either the reissue claims are broader than the patent claim, in which case the reissue application was filed too late, or they are

of the same scope as the patent claim, in which case the statutory basis for reissue is lacking. The statutes afford no authority for the reissue of a patent merely to add other claims of the same scope as those already granted. Accordingly, even if we could agree with appellant's contention that the appealed claims do not differ materially from the claim of his patent, it would be necessary to affirm the decision below on the ground that there is no statutory basis for a reissue.

For the reasons given we conclude that the appealed claims were properly rejected on the grounds above discussed, and it becomes unnecessary to consider the further grounds of rejection raised by the Patent Office tribunals; viz., that claim 4 is not supported by appellant's disclosure and that all the appealed claims are unpatentable to appellant in view of the Watts patent.

Appellant urges that the appealed claims should be allowed to him in order that he may show, in interference proceedings, that those claims should not have been allowed to Watts, and that "After the interference has been decided, the Patent Office may then wish to state that those claims are unpatentable over the allowed claim to the appellant." However, as provided by Patent Office Rule 201(b), 35 U.S.C.Appendix, interferences are declared between patents and applications only when the claims in issue "are allowable in all of the applications involved." The question as to patentability of claims to an applicant must be determined before any question of interference arises and claims otherwise unpatentable to an applicant cannot be allowed merely in order to set up an interference.

Pursuant to a motion, filed on behalf of the Commissioner of Patents, suggesting a diminution of the record, said motion having been granted by the court, certain additional papers were certified by the Patent Office and added to the record, it being understood that the costs of having such additional mat-

ter printed were to be taxed at the time of the decision of the appeal. It being the opinion of the court that such additional matter was properly a part of the record and should have been included therein, the costs incident to their inclusion are accordingly taxed against appellant.

The decision of the Board of Appeals is affirmed.

Affirmed.