JOHNSON BROS. ENGINEERING CORPORATION et al. v. MASTERS.

No. 4348.

Circuit Court of Appeals, Seventh Circuit.

March 11, 1931.

Rehearing Denied May 28, 1931.

Cheever, Cox & Moore, of Chicago, Ill. (Howard M. Cox, Geo. L. Wilkinson, Ballard Moore, and A. C. Paul, all of Chicago, Ill., of counsel), for appellants.

Rector, Hibben, Davis & Macauley, of Chicago, Ill. (Frank Parker Davis, of Chicago, Ill., S. L. Wheeler, of Milwaukee, Wis., and Harry W. Lindsey, Jr., of Chicago, Ill., of counsel), for appellee.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

EVANS, Circuit Judge.

Presented for determination on this appeal are questions involving the validity and infringement of three patents. They all relate to outboard motors. Two of them were issued to Carl H. Hult and Oscar W. Hult, Nos. 1,207,761 and 1,166,523. The first enumerated is known as the "A" patent, the latter as the "B" patent. A third patent, No. 1,467,641, to L. J. Johnson also deals with an "outboard motor." The first-named appellant owns the patents, while the Johnson Motor Company is a licensee and manufacturer of the motors embodying the patent. Appellee is a customer of the Evinrude Motor Company, which is defending the suit.

The court found for appellee on all issues.

*Johnson patent, No. 1,467,641:* The advance in the art of outboard motors represented by this patent may be best described in the language of the inventor, who in the specifications of his patent, thus spoke:

"The invention relates to out-board motors * * * and * * * is pivoted to a detachable bracket carried by the gunwale, and pivotally mounted in a sleeve in such a manner that the device may be moved entirely around or for 360 degrees in a horizontal plane. Also to provide the attaching bracket with outwardly extending slotted arms concentric with the pivotal point of the device with the detachable bracket, said arms having adjustably mounted therebetween a segmentally shaped plate, which plate limits the forward movement of the tubular shaft casing and at the same time allows the tubular shaft casing and the device as a whole to be tilted in a vertical plane.

"A further object is to provide the tubular casing with a sleeve having inwardly extending segmentally shaped flanges, which flanges are so positioned that when the tubular casing has been rotated for placing the

propeller in reverse position, for instance in backing, the inwardly extending flanges will engage over segmentally shaped ribs on the segmentally shaped plate, thereby holding the device against movement in a vertical plane during a backing operation.

"A further object is to provide in connection with a pivoted out-board motor, which motor is pivoted to move in a horizontal plane or a vertical plane and comprising a tubular casing on the upper end of which is mounted a motor, and the lower end provided with a propeller driven by shafting from the motor and extending through the tubular casing, a cooling circuit for the motor substantially entirely encased in such a manner that the piping from the pump located adjacent the propeller passes through the tubular casing to a point above the pivotal points of the device, and thence to the engine jacket. Also to provide a pipe connection to the engine jacket, which pipe connection extends downwardly through the tubular casing and discharges through the tubular casing wall at a point below the gunwale of the boat, and preferably above the water line, thereby preventing discharge of water into the boat when the boat is backing or when the device is being used not only for driving but for steering purposes."

Two claims (2 and 9) set forth (and also mark the limitations of) the inventions. They are rather unusually dissimilar and disconnected for two claims appearing in the same patent. The disposition of the contentions respecting one claim in no way aids in the determination of the validity or infringement of the other.

Claim 9 reads:

"9. The combination with an outboard motor comprising

"(a) an engine supported on a tubular propeller drive shaft casing,

"(b) and cooled from a pump adjacent the lower end of the tubular casing,

"(c) of a pipe connecting the pump and the engine cooling system,

"(d) said pipe extending through the tubular propeller drive shaft casing to one side of the center of the casing."

If appellee avoids infringement of this claim, it is because his water pipe does not actually pass through the wall of the tubular casing but lies in an indentation therein. Appellants argued that such location of appellee's water pipe is the mechanical equivalent of element (d) of the above-quoted claim.

The issue is simplified by a study of the file wrapper. When the application was pending, Johnson amended this claim 9 and then stressed element (d) in this language:

"Claims 7 to 12 have been amended to more definitely define the invention and to avoid the Hult citation. It will be seen that these claims have been amended to include the idea of the pipe connections 31 and 41 extending through the propeller drive shaft casing, which Hult does not do. In the Hult citation a water jacket is formed around the outer periphery of the drive shaft casing a. Hult requires the use of an extra sleeve b; while applicant uses the shaft casing and consequently eliminates an extra sleeve around the shaft casing, thereby reducing the cost to a minimum and forming the device in a compact form. It will be noted that applicant's structure eliminates extra packings at the upper and lower ends of the casing, and Hult does not show means for discharging from the engine jacket at a point below the engine casing as claimed by applicant."

Our conclusion is that appellee avoided infringement of claim 9 and kindred claims in the patent by locating his water pipe outside the wall of the tubular casing.

Claim 2, analyzed into its elements, reads:

"The combination with

"(a) A pivoted outboard motor pivoted to a bracket carried by a boat,

"(b) Said motor driving a propeller through a tubular casing, of

"(c) Spaced arms between which the tubular member is disposed,

"(d) An adjustable limiting member disposed between the arms and adjustable inwardly and outwardly

"(e) And members carried by the tubular casing and adapted to engage

"(f) Members carried by the limiting member and prevent movement of the tubular member pivotally in a vertical plane upon movement of the tubular member in a horizontal plane."

Appellee conceded the validity of this claim, but denied its infringement.

A motor provided with a propeller shaft which was freely tiltable as well as automatically tiltable was old when Johnson conceived the structure, for which he secured this patent. Moreover, the workers in this art had produced outboard motors, which

not only possessed free tilting propeller shafts as well as shafts which tilted freely automatically, but they had also supplied these motors with means which locked the propeller against tilting when it was in reverse position; that is, when in position to back up the boat. It was into this field, somewhat preoccupied at least, that Johnson entered when he designed his structure, which was offered as an effective and practical solution of the problem of providing an anti-tilting interlock for an outboard motor wherein the propeller casing, the drive shaft casing, and the engine block were integral. Such a structure contemplated, of necessity, a swing of the entire unit through a semicircle before the locking means acted.

In short, Johnson's mechanism was but a species of the genus, an anti-tilt automatic interlock. That it worked successfully must be conceded. Nevertheless, it was a specific structure prepared for a machine of a particular design. That such a combination spelled invention may be, as it is by appellee, conceded.

Appellants argued that the inventor's concept is such that infringement may not be avoided by a change in the mechanical means which produced the locking. If the field were a virgin one into which no inventor had entered, we would readily accept appellants' contention. For it would be manifestly contrary to the spirit of the patent grant to permit of its avoidance through a change in a simple mechanism not germane to the inventor's contribution. In other words, if Johnson contributed the concept of a freely tilting shaft becoming automatically locked when the propeller was moved to its reverse position, the language of the claims would be given a wide range of equivalency. But a freely tilting shaft was early found to be a necessity in the structure of an outboard motor in order to avoid damage to the motor and to the boat, as well as danger to passengers. When the propeller struck a snag or an unexpected sand bar, unfortunate results were avoided only through such a free tilting shaft. Likewise, experience early demonstrated the necessity of providing means for locking the propeller shaft when in reverse and when the danger above alluded to was not present. The record contains illustrations of such locking devices, which were in use prior to Johnson's contribution. True, they differed substantially from Johnson's structure, but their existence necessitates our placing this patent of Johnson's into that class of patents where we, of necessity, must restrict the elements of the combination to a narrower range of equivalents. Another reason for such restriction in the range of mechanical devices appears in the different character of the two competing structures.

We do not wish to be understood as holding that broad claims may not be obtained in the field of mechanics simply because such field has been previously well occupied. The importance of the discovery and the depending range of equivalency cannot be measured by the extent to which the field has been preoccupied, nor is it determined by the length of the step which represents the advance which the invention marks. A short step upward may be more unusual and beset with more difficulties than a long step forward. Results, difficulties overcome, failure of others to meet the problem, the extent of the demand, and the reward following success are the principal factors which must influence the courts in their efforts to classify patents for the purpose of construing claims and specifications and in fixing the range of mechanical equivalency.

We refer to the occupied field in the instant case because satisfied that the invention, measured by the above tests, covered, not a primary discovery, but was an adaptation of well-known mechanical means to the solution of a problem not outstandingly difficult in the first instance and which had been made much easier by others who had provided mechanical means for locking their shafts against tilting.

It is unnecessary to here set forth the drawings or to quote from the specifications to point out the differences in the two structures. Elements (e) and (f), above quoted, of the Johnson patent provide a limitation which is not found in appellee's patent. The members carried by the tubular casing engage members carried by the limiting machine only "upon movement of the tubular member in a horizontal plane." The means provided by the defendant do not engage each other only when the movement of the tubular member is in a horizontal plane. Appellee's counsel have argued that the language "upon movement of the tubular member in a horizontal plane" is not descriptive of an element in the combination, but describes an operation of elements in the combination and could well have been omitted. Therefore, so it is contended, it

may be disregarded in determining equivalency of means. It seems to us, however, that the Johnson structure would lock only through such a' movement of the tubular member. The structure does not permit of operation excepting upon such a movement. The specifications, which constitute the background of the claim reading, permit of no other construction.

Appellee's means for securing a locked shaft in reverse differed from that disclosed by Johnson. The difference is material. It cannot be said that such difference is a matter of choice of two simple mechanical means but is rather a difference necessitated by the different constructions of the two outboard motors. Finding, as we do, that this claim does not read literally upon appellee's structure and that the difference is outside the range of mechanical equivalence, we agree with the District Judge in his finding of noninfringement.

■ *Hult & Hult "A" patent, No. 1,207,761:* The questions involving the validity and the alleged infringement of this patent are made difficult by an involved fact background. Appellants asserted that the invention is an important one and marked a decided advance in the outboard motor art and is, therefore, entitled to a liberal construction both of specifications and claims.

If the inventors made the advance claimed, we agree with appellants in their position. Eibel v. Paper Co., 261 U. S. 45, 63, 43 S. Ct. 322, 67 L. Ed. 523.

The necessity of ascertaining the place of the invention in the art and the extent of its contribution over the prior art cannot, in the construction of patents, be overestimated. If the patent covers an invention of much merit—marks a long step upward over the prior art—then neither the specifications nor the claims should be read literally. This is particularly true of the language appearing in the specifications which are illustrative of a structure, which the inventor has in mind, or which explains an approved or preferred form of his invention or discovery. In fact, in certain discoveries, notably in the field of physics or chemistry, the applicant for such a patent does not, and cannot, early appreciate the richness of his discovery. Years of experimentation are necessary before all of its results are known. In such cases history is more important and illuminating than speculation.

■ Because the patent does not cover results and because the inventor is entitled to protection for his new process or his new combination even though he does not, when he files his application, know the full consequences of his discovery, his descriptive or illustrative words, used in the specifications should rarely, if ever, be construed as words of limitation of his discovery or of his grant. The force of this observation is illustrated in the case of the mechanic who is confronted by a specific problem 'and whose experience is limited to the particular occupation in which he is engaged. In solving the specific problem before him, he is apt to overstress the form or type which is preferred in his limited field of activity. The discovery, however, may be of importance and adaptable to use in another branch of the industry, to which he is a total stranger. Therefore, his preferred or illustrated types would be of little or no value in the kindred field. Nevertheless, his combination of elements would find ready adaptation in said kindred field, and he should be protected against invasion of his discovery by the worker in such other field.

The three patents now before us illustrate the two kinds of inventions of which I have been speaking. The Johnson patent and the Hult & Hult "B" patent are of the kind which call for strict construction. The location of the pipe, for instance, in claim No. 9 of the Johnson patent, is of the essence of the invention. Such location could not be changed from inside to outside the shaft casing without avoiding infringement. The Hult & Hult "A" patent, if valid, clearly is not of this limited class.

We set forth the prior art, the problem which confronted the outboard motor manufacturer, and the Hult and Hult solution thereof, in the language of appellants' counsel:

"The patents in suit relate to outboard motors adapted to be detachably fastened to the back of a boat, and being of a type in which the power plant consists of an explosion engine having one or more cylinders disposed horizontally, and having the engine shaft arranged vertically and elongated so as to extend down below water level. The upper end of the engine shaft is provided with a fly-wheel which rotates in a horizontal plane and is fastened directly to the engine shaft. The engine shaft is enclosed within an elongated vertical sleeve,

the lower end of which supports and is rigidly fastened to a casing—frequently referred to as the 'gear housing' or 'gear casing.' This casing forms a bearing for the horizontal propeller shaft and also encloses the gearing by which the vertical engine shaft transmits power to the horizontal propeller shaft. The sleeve surrounding the engine shaft is turnable in a horizontal plane by means of a tiller. Consequently, when the tiller is moved sidewise it moves the sleeve angularly, and this produces a corresponding angular movement of the gear casing and propeller for steering purposes.

"There were two outstanding disadvantages of the (old) construction. * * * In the first place as the engine frame was rigidly fastened to the boat, the boat was continuously subjected to a severe vibration, due to the explosions occurring within the engine cylinders. An outboard motor, * * * is a portable device, (and) is necessarily comparatively light in weight relatively to the amount of power generated. Being comparatively light, the engine frame was subjected to a recoil effect at each explosion and this was so severe that these outboard motors were rigidly attached to the stern boards of boats.

"A second objection lay in the fact that the engine caused the tiller to exert a strong jerky sidewise pull in the direction of rotation of the engine shaft, and this imposed a disagreeable and severe burden upon the steersman.

"Instead of fastening the engine frame to the boat as rigidly as possible, (Hult and Hult) mounted the engine frame on a loose pivot and then rigidly connected the engine frame to the gear casing at the lower end of the structure. And they fastened the tiller handle directly to the engine frame. The surprising result was that the heavy rotary kick or recoil of the engine frame, * * * was substantially neutralized by the rigid connection to the gear casing and associated parts at the lower end of the structure. * * * The Hults were the first to perceive * * * that the recoil in the engine frame was in the opposite rotative direction, and were the first to discover that this tendency of the gear casing to rotate in one direction would be sufficient to neutralize the recoil in the engine frame and make it safe to mount the structure, if unified, (i. e., if the engine frame and gear casing were rigidly connected together) on

a bearing so constructed that said unified structure would be free to rotate in a horizontal plane. * * * By this means Hult & Hult eliminated the heretofore destructive vibration of the boat due to the explosions in the cylinder; eliminated the constant side-thrust on the tiller handle, which heretofore had steered the boat off its set course; and, in addition, made steering easier."

The first perplexing question calling for determination is the date of the disclosure of appellants' invention. Appellee says June 16, 1915, is the date, while appellants assert July 8, 1912. Between these two dates there appeared outboard motors which have an important bearing upon the validity of this "A" patent.

Hult and Hult first made application for a patent in Sweden. Their application was there filed July 8, 1912. A similar application was made for a patent in the United States on July 3, 1913. The application for the Swedish patent was abandoned. The application for the United States patent was granted and a patent, No. 1,146,427, known as the parent patent was duly issued July 13, 1915. This patent is not in issue in this litigation, but its disclosures are decisive of the effective date of the "A" patent. For on June 16, 1915, the inventors made a divisional application of this patent and this divisional application, referred to as the "A" patent, was issued December 12, 1916. It is this patent which is here under consideration.

Appellee argued that this "A" patent, issued upon the divisional application, was not illustrated or described in the Swedish application nor in the similarly worded United States application, but was granted with an element included which was not referred to in the prior applications. Appellants, on the other hand, contended that the "A" patent was properly issued as a divisional application of the parent patent, the disclosures of which furnished a sufficient basis for the allowance of the claim sued on, to wit claim 2. In other words, the date of its claim goes back to the date of the application for the Swedish patent which is July 8, 1912. The claim sued upon, divided into its elements, reads as follows:

"In an outboard motor, the combination with

"(a) A motor having a central crank casing,

"(b) Engine cylinders arranged symmetrically at opposite sides of the casing and

"(c) An extended motor shaft in line with the crank casing,

"(d) A propeller driven from said motor shaft,

"(e) A sleeve surrounding said motor shaft and immovable relatively to the motor,

"(f) And means in which said sleeve is freely revoluble and by which said motor is supported."

If we were permitted to rest our decision solely upon the specifications, there would be more force in appellants' argument. But an examination of the file wrapper showed that appellants restricted themselves by their action in the Patent Office. The claims, as originally drawn, did not include element 2. As thus drawn, the examiner rejected all claims on the basis of two patents, one of which, bearing date October 21, 1913, was to Nydegger. Applicants then amended the claim to insert element 2 and wrote the Patent Office:

"By the foregoing amendment applicants have limited the claims to a construction including a balanced motor, i. e., one in which the engine cylinders are arranged symmetrically at opposite sides of the crank casing and the engine shaft depends in line with the crank casing. The combination thus claimed appears to be novel over the art."

They supplemented this amendment by a further argument a few days later, stating:

"Supplementing the last paper filed in this case applicants beg to point out that the present application is a division of 777,152, which was filed on July 3, 1913 and corresponded to the Swedish application which was filed July 8, 1912. Under these circumstances it is submitted that the patent to Nydegger, which was issued on October 21, 1913 and the application for which was filed May 3, 1913 is not a reference against this case."

Upon this argument and with element 2 of the combination thus stressed, the Patent Office ordered the patent to issue.

In view of this record appellants are estopped to assert that element 2 was not of the essence of their invention.

■ As stated in I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 47 S. Ct. 136, 141, 71 L. Ed. 335:

"The applicant having limited his claim by amendment and accepted a patent, brings himself within the rules that if the claim to a combination be restricted to specified elements, all must be regarded as material, and that limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as disclaimers."

■ With appellants' contention that element 2 was nonessential eliminated, we approach the query, Were the disclosures of the parent application sufficient to support a divisional application for a patent each claim of which contained element 2? A study of the specifications and drawings of said parent application compels us to answer this inquiry in the negative.

The fundamental thought of the original application, it is true, would apply to a motor with one or two cylinders. But the necessity of two cylinders specifically located was no part of this concept. In other words, the combination disclosed in the parent application might be used with an engine containing either one or two cylinders. Neither the combination nor the specifications upon which it was based suggested the necessity of, must less demanded, the presence of two cylinders arranged symmetrically at opposite sides of the casing. In fact, the very requirement of element 2 negatives the thought of a combination wherein one element called for two cylinders specifically located. If the disclosure of the parent application might be used with equal facility upon a one or a two-cylinder motor, it would seem to show that such application could afford no basis for a divisional application which was to support a patent where the two cylinders specifically located were of the essence of the combination.

In the specifications of the parent application, the applicants say:

"Outboard motors constructed according to this invention are characterized, principally, by the arrangement that the motor is rotatable round a vertical (or somewhat inclined) axis, * * *. A simple and suitable suspension of the motor is obtained through the arrangement that the sleeve which, as is usual, surrounds the motor shaft, (hereinafter called the 'shaft-sleeve') is mounted in a ring or sleeve (hereinafter called the 'attachment sleeve') which is pivotally connected with that part of the

suspension arrangement that is fastened to the boat, in addition to which the shaft-sleeve is adjustable within the attachment sleeve."

This language furnishes no support for the disclosure appearing in the specifications of the "A" patent:

"The combustion motor or engine comprises two oppositely disposed cylinders 1, provided with the usual operating appurtenances, * * *. Owing to the fact that in the present structure the motor and its shaft together with the sleeve surrounding the same form practically a unitary structure, we obtain the advantage that the force which tends to rotate the motor system in the direction of rotation of the motor shaft is counteracted by the counter pressure of the motor on its cylinders, so that the work of the helmsman is rendered very much easier."

Our conclusion, therefore, is that the original specifications furnished no basis for a divisional application, where, as a necessary element of each claim, there were "engine cylinders arranged symmetrically at opposite sides." This conclusion necessitates our consideration of the prior art as of the date of June 16, 1915.

The prior art as of this date included a British patent, No. 22,312, issued in 1902, a United States patent to Waterman issued in 1907, and the Waterman motor designed and sold during the year of 1907, the United States patent to Haschke issued March 26, 1912, the Stockemann United States patent applied for August 16, 1913, the Buehner motor made and publicly used during the summer of 1914, the Hult and Hult "B" patent issued January 4, 1916, and others. For reasons which need not be elaborated, we have excluded from our consideration of the prior art the Hult "B" patent. The remaining prior art, however, contained disclosures which anticipate the Hult invention. The Haschke patent dealt with a motor operated by electricity, but the art was the same and the disclosures therein appearing must be considered as a part of the prior art. Assuming as we do that "the essence of the Hult invention resided in the mounting of the horizontal explosion engine cylinder, the sleeve, and the propeller carrying gear casing to turn freely as a unit about the vertical engine cylinder drive shaft as an axis," we are satisfied that they were fully anticipated by the Buehner motor, the Waterman motor, as well as by the Stockemann patent.

In all of these motors there was, of course, some difference in the arrangement of the parts to the combination. Nevertheless, their occupancy of the field prior to Hult's entry made it impossible for him to secure a monopoly for the combination he disclosed.

*Hult "B" patent, No. 1,166,523:* It would serve no useful purpose to here elaborate our views on this patent. It was not a primary patent and was not entitled, upon the question of infringement, to a wide range of equivalents. The District Court correctly disposed of it in the following language:

"If the claims in suit are construed to embrace either of the alleged infringing devices, they are invalid in view of the Waterman and Buehner motors, and the disclosures of patents 1,021,408 to Haschke, 1,131,287 to Stockemann and 1,146,427 to Hult. In either aspect the decree should be for the defendant on these claims."

We conclude that none of the three claims sued upon was infringed by appellee.

The decree is affirmed.