NORTHWEST ENGINEERING CORPORATION v. KEYSTONE DRILLER CO.

HARNISCHFEGER CORPORATION v. SAME.

BUCYRUS-ERIE CO. v. SAME.
Nos. 5036, 5035, 5037.

Circuit Court of Appeals, Seventh Circuit.
March 29, 1934.

Henry M. Huxley, of Chicago, Ill., Louis Quarles, of Milwaukee, Wis., Roger Sherman Hoar, of South Milwaukee, Wis., and Frank Parker Davis, of Chicago, Ill., for appellants.

F. O. Richey and H. F. McNenny, both of Cleveland, Ohio (Richey & Watts, of Cleveland, Ohio, and George E. Mueller, of Chicago, Ill., of counsel), for appellee.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above).

The defense to claim 4 of the Clutter patent is non-infringement. Claim 4 reads:

"In an excavating machine a pivoted boom, a scoop-carrying member pivotally connected therewith, a pulling member for elevating and lowering said boom, *a pivotal means carried by the boom and connecting the pulling member therewith, and said scoop-carrying member,* a scoop connected with the scoop-carrying member and projecting toward the boom, and a pulling member connected with said scoop."

Non-infringement is asserted on the ground that none of the alleged infringing machines has the element described in the italicized words of the above-quoted claim. In fact, it may be said that infringement turns on the use of the word "carried" as it appears in this element. In other words, it is clear that infringement is shown if the pivotal means therein referred to is "carried by the boom." On the other hand, infringement is avoided unless the court is justified in holding that appellants' machines have a "pivotal means carried by the boom" or its mechanical equivalent.

There can be no dispute as to the facts for none of appellants' machines has its pivotal means fixedly resting upon the boom.

In order to better understand the scope of the invention we quote from the specifications:

"This invention relates to excavating machines chiefly used for excavating cellars, trenches and in deepening and widening water courses, and has for its object to provide a simply constructed and operated mechanism

for loading, elevating and emptying a scoop and which may be attached to any suitable machine available for the character of the work referred to.

"The invention consists mainly in the arrangement of the scoop, the scoop-carrying member, and boom for the two pulling members making it possible for the operator, to extend the scoop beyond the end of the boom, to raise and lower the boom or fill the scoop by manipulating the two pulling members."

Appellants reply upon the file wrapper to support their argument that the claim should be limited to the strict language which the inventor adopted when he described the said pivotal means in this combination claim. The file wrapper supports this argument. Upon the rejection of his application for a patent March 31, 1916, the inventor amended or rewrote his claims. The claim in suit thereupon made its first appearance. In presenting this claim (4) after the rejection of pending claims, the applicant wrote

"It will be pointed out that none of the references disclose a pivoted boom, a scoop-carrying member pivotally connected therewith, a pulling member for elevating and lowering the boom, a scoop carried by the scoop-carrying member and projecting towards the pulling member, and means carried by the boom for connecting the pulling member therewith and with said scoop-carrying member.

"Attention is directed to the last element.

"*The applicant was the first in the art to mount a means upon the boom* for connecting a pulling member therewith but also for connecting the pulling member with the scoop-carrying member."

In view of the language of claim 4 and the position of the inventor thus taken when he substituted this claim for rejected claims, we do not feel at liberty to ignore the words of limitation, "carried by the boom" when construing the language or determining the scope of this claim. The drawings confirm this conclusion.

As none of the infringing machines are so constructed (that is, none of them has a pivotal member carried on the boom), it is impossible to sustain the finding of infringement except upon a most liberal application of the doctrine of equivalents.

Appellee argues that the Northwest machines "operate like and realize all of the advantages of the Clutter patent" * * *. The only differences between these two machines and each of the other machines charged to infringe is in the mechanical details of the means * * *." It further says:

"Defendants undertake to escape from this situation by asking the Court to first read into the claim a particular kind of means for connecting the hoisting line to the ditcher stick and, second, after having done so, to deny the patentee the right to resort to the doctrine of equivalents * * *."

The test of infringement is not, primarily, directed to purposes, intentions, or results as such. In a combination machine patent, the court must look to the elements of the combination, not to the results of such combination. Of course, the court can not read into the claim "a particular kind of means." Likewise, the applicant can not insert words of limitation which define "a particular kind of means" and then stress those words before the patent office in order to secure favorable action on his claim and expect the court to ignore the language or the action of the applicant in the patent office.

Nor can we agree with appellee's counsel when he says the claim and the drawings described only the preferred embodiment of the invention.

In the conclusion which we have reached we are not applying any doctrine of estoppel to appellee. We have merely sought to fairly and truly appraise the metes and bounds of one of the elements in the patented combination. The applicant was his own lexicographer. He described his invention. By his drawings, he amplified the meaning of the words by him adopted when he said, "carried by the boom." More than this, when he was confronted by a rejection of a broader claim, he specifically, and in words that permitted of no doubt as to their meaning, told the patent examiner what he meant by this language. Fairness to the public, as well as to the inventor, necessitates our giving the meaning to the language which he himself gave when he explained his invention to the examiner.

Nor is the present invention one which calls for the application of the rule which we have frequently invoked and which permits of a liberal range of equivalents in order that an outstanding discovery may be adequately protected. We adhere to the rule announced in Johnson Bros. Engineering Corp. v. Masters, 49 F.(2d) 187, 190, where we said:

"The necessity of ascertaining the place of the invention in the art and the extent of its contribution over the prior art cannot, in the construction of patents, be overestimated. If the patent covers an invention of much

merit—marks a long step upward over the prior art—then neither the specifications nor the claims should be read literally."

In our effort to appraise the true worth of this patent we have reached the conclusion that it is not a pioneer contribution but rather an improvement on the existing machines. The art was quite full of excavating machines of the general type described in the patent in 1915. There were machines wherein there was (a) power machinery, (b) a boom, (c) a hoisting or pulling line passing from the drum to the scoop, (d) a scoop, and (e) a ditcher stick connected with the boom, to which the scoop is fastened. With such machines as a starting point, the inventor was limited to changes in the mechanics of the various parts so as to permit the operator to more effectively handle the scoop while applying the power. Of course, such a fact background permitted of numerous improvements, some of which might rise to the dignity of invention. It is idle, however, to argue that every improvement patent is a pioneer or that its appearance revolutionized the industry.

█ In making a statement of our conclusion, it must be, as it is, conceded that all three terms—primary patents or basic patents, and improvement patents—are relative terms. There is in each case a range or boundary the limits of which are somewhat elastic and shadowy. As we approach these boundaries, we run into a twilight zone, and it is at times not easy to determine where the one ends and the other begins. An improvement patent may be important and valuable—in fact, it may be more important commercially than some pioneer or basic patents. But the test by which a patent is to be classed as primary or basic, as distinguished from an improvement patent, is in the nature of the field in which the inventor works and the character of the discovery he makes. If the field be a virgin one, heretofore untraveled by the discoverer (or if traveled, the explorer became lost), and the discovery be recognized by the scientific world or the industry wherein the investigation or work is done as startling, unexpected, and unprophesied (in a word, no herald presages its appearance), it is known as a basic or pioneer patent. It is hardly necessary to observe that such discoveries are few.

██ The improvement patents, into which class the vast majority of patents fall, cover discoveries made in the fields where others have already labored but have failed to obtain that state of perfection which frequently follows experience, further study, and experimentation. In the instant case, we recognize that other courts have referred to this Clutter patent as a pioneer or basic patent. Byers Machine Co. v. Keystone Driller Co. (C. C. A.) 44 F.(2d) 283; Keystone Driller Co. v. General Excavator Co., 290 U. S. 240, 54 S. Ct. 146, 78 L. Ed. 293. With this conclusion, however, we reluctantly but positively differ. It is very apparent that the court in 290 U. S. 240, 54 S. Ct. 146, 78 L. Ed. 293, was not attempting to determine the status of the patent, but was merely making a fact statement for the purpose of considering the issue of unclean hands.

Our conclusion is that none of appellants' machines infringed claim 4 of the Clutter patent.

*Wagner Patent No. 1,476,121.*

█ The defense to claims 6 and 7 of the Wagner patent is invalidity. The patent covers an "Excavating Scoop." We quote from the specifications:

"This invention has reference to excavating scoops, and its object is to provide an excavator or ditcher scoop capable of digging narrow or wide trenches and by means of which the excavated material may be deposited in containers of low altitude.

"In accordance with the invention, which is assumed to be attached to a suitable excavating machine, there is provided a swinging boom carrying at its outer end a structure, which may be termed a ditcher stick in normally pendant relation to the boom although capable of being moved into other relations thereto, and this stick carries a ditcher scoop pivotally hung on the ditcher stick to rock on a substantially horizontal axis, which axis is located at approximately the center of gravity of the scoop.

"With such a boom and scoop and appropriate rigging dirt may be excavated for various purposes and deposited in carts or other containers with great facility. The ditching scoop is of a character whereby the scoop is caused to actively travel toward the machine either in the line of travel of the machine as a whole or transversely thereof, and when the scoop is full it is lifted, mouth end upwardly, from the excavation being formed, and then by swinging the boom in a suitable direction the scoop is brought over the container and released, whereupon the load, then overbalancing the scoop, causes the latter to invert so that the mouth end is downward and the load will naturally gravitate from the scoop into the container."

Claim 6 reads as follows (the division of the claim into the elements being for the sake of convenience):

"6. In an excavating machine, (1) a swinging boom mounted for up and down movements, (2) a ditcher stick pivoted to the outer end of the boom and extending above and below the same, (3) means for mounting a sheave to the upper end of the stick, (4) a hoisting line passed about the sheave for raising and lowering the boom and stick, and also for moving the stick outwardly lengthwise of the boom, said stick being movable to a substantially horizontal position beyond the boom, (5) a scoop mounted at the lower end of the stick and having its open end facing the machine when in loading position, said open end carrying digging teeth and facing downwardly toward the ground when the stick is in its extended position, (6) and a hauling line connected to the open end of the scoop for drawing it toward the machine to fill the same, whereby the coaction of the hoisting and hauling lines causes excavating movements of the scoop and its elevation and lowering."

Claim 7 does not differ sufficiently from claim 6 to make its separate consideration necessary. Claim 6 provides for "means for mounting a sheave to the upper end of the stick" and also for a "hoisting line passed about the sheave for raising and lowering the boom" whereas claim 7 provides for a "hoisting line connected to the top of the ditcher stick."

The patent covers features allegedly novel other than the mounting of the sheave upon the upper end of the stick and providing a hoisting line which is passed about the sheave, etc., which elements distinguish claim 6. The other thirteen claims of this patent covering other features are not involved in this suit.

Appellants rely upon several prior art patents including the Clutter patent, which has just been discussed, and the Hudson patent, No. 1,281,379.

Wagner patent is distinguishable from the Clutter patent in that it provides "means for mounting a sheave to the upper end of the stick." Whether this, in the absence of any prior art citation, would constitute invention, we need not discuss, for "means" of like character are disclosed in the Williams patent, No. 711,449, and the Benedick patent, No. 876,517, and the Hudson patent, No. 1,281,-379.

In fact we are unable to see anything patentable in the claims in issue in view of this Hudson patent which has the two-line control, the hoisting line being connected with the upper end of the ditcher stick by means of the sheave and a link. In view of the disclosures of the above-mentioned Williams and Benedick patents, we can see nothing which would approach patentable novelty in mounting the sheave upon the end of the stick or in connecting it to the end of the stick through the instrumentality of a link. Our conclusion, therefore, is that both claims 6 and 7 of the Wagner patent are invalid.

*Downie Patent No. 1,511,114.*

Appellants contend the claims of this patent in controversy are invalid for three reasons: (a) The claims cover an aggregation rather than a patentable combination. (b) They are anticipated by the prior public use at Joplin, Missouri. (c) They are anticipated by the Morison patent, No. 1,249,805, and by other structures which so nearly anticipate the patent in suit that the improvements over such structures would not constitute invention.

We adopt appellee's own description of this invention:

"As accomplished and useful as the Clutter machine was, there were some things which were important to this kind of excavation which it could not do. While it could spot the load accurately, it could not dump it accurately. This was due to the fact that the scoop did not dump at exactly the position where it was spotted. (R. p. 104.) During the dumping it swung in an arc upon its pivot from its latched to its unlatched position. For this reason it had to be spotted ahead of the position where it was to be dumped and the dumping took place during the arcuate movement of the scoop. In other words, allowances for such movement had to be made in the aiming of the scoop and before the trigger was pulled; the scoop had to be aimed so that the load would be discharged at the proper position. It frequently happened that the aim of the operator was not good and the load was mis-fired. * * * It frequently happened that the load was wet clay, or the like, and would stick to the scoop and efforts to dislodge the load by jarring the scoop with the hauling line tended to revolve the scoop to closed position, preventing the escape of the material and defeating the purpose of the jarring. An uncertain and uncontrollable motion resulted from the jarring effort, tending to scatter such run-out of spoil as was induced and further increasing the risk of damage to the conveyance. From time to time accretions would build up, within the

scoop, which could be removed only by striking the completely inverted scoop against some hard surface, or by means of a handpick and shovel.

"* * * It was * * * invention to provide, as Mr. Downie did, a mechanism whereby the clay and mud dislodging, the bottom closing and the rooting could be done with two hands and one mind."

There are fourteen claims in the patent, of which claims 6, 9, 10, 11, 12, 13, and 14 are in issue. They were all sustained and found to be infringed. We quote the typical claims.

"6. In an excavating machine, the combination of a boom mounted for up and down movements, a scoop-carrying member pivoted to the outer end of the boom at a point between the ends of said scoop-carrying member, a hoisting line engaging a pulley connected pivotally to the upper end of the scoop carrying member for controlling the up and down movements of the scoop-carrying member and boom, and in conjunction with the weight of the boom, for causing outward movements of the lower end of the scoop-carrying member, a scoop attached to the lower end of said scoop-carrying member, the attachment of the scoop to the scoop-carrying member being rigid and fixed throughout the entire cycle of operation, the inward end of said scoop being open, a hauling line for drawing the scoop inwardly, a pivoted bottom for the scoop pivoted to the sides of the latter, the axis of movement of the bottom being arranged transversely of the scoop and located adjacent to the open end thereof, and an automatically engaging latch means for normally maintaining the bottom in closed position."

"9. In an excavating machine, the combination with a tiltable boom, a ditcher stick pivoted at one end to the outer end of the boom, a scoop rigidly secured to the lower end of the ditcher stick at a point in rear of the open end of the scoop, and a drop bottom pivoted to the sides of the scoop at a point below and in advance of the rigid connection between the scoop and the stick."

"14. In an excavating machine, the combination with a swinging boom mounted for up and down movements, a ditcher stick pivoted to the outer end of the boom, a scoop rigidly secured to the lower end of the ditcher stick at a point in rear of the open end of the scoop, said open end facing inwardly toward the machine, a drop bottom pivoted to the sides of the scoop at a point in advance of the rigid connection between the scoop and

the stick, said bottom having earth entering teeth at the pivotal end, rake teeth fast to the sides of the scoop and overhanging the pivots of the bottom so as to protect said pivots, a latch for the bottom, and means for releasing the latch, the toothed end of said bottom swinging upwardly with the teeth facing in that direction and extending above the bottom when the latter is in dumped position."

The defense arising out of the so-called Joplin use of a ditcher with a drop bottom scoop of the skimmer type depends upon the statement of several witnesses. Their testimony was, for the most part, taken by depositions. One witness, it seems, testified orally in one of the Cleveland trials, and the testimony by him there given was received by the District Court in this suit.

It seems that the issue tendered by the Joplin use was quite squarely presented to the court in the Byers litigation. In view of the analysis of the testimony and the findings and conclusions of Judge Jones in the later Byers case, we are not prepared to rest our decision in this case on the Joplin use. The evidence, however, rather clearly established the use of a drop bottom scoop. There is a basis for the rejection of the testimony of one witness, a Mr. Clutter, who is a brother of the inventor whose patent we have heretofore discussed, as unworthy of belief. A considerable lapse of time between the date of the Joplin use and the taking of the testimony detracts from the force of the other evidence.

This Joplin use, however, is confirmatory of our conclusion respecting the narrowness of the claim of this patent. A drop bottom scoop was not original with either Downie or those who operated a ditcher at Joplin, Missouri. Morison, in his patent No. 1,249,805, not only showed by his figure 2 a drop bottom scoop, but the claims deal specifically with a two part dipper and in his specifications he says:

"In our arrangement the eccentrically pivoted front half of the bucket always falls open and thus the front and back walls of the bucket are separated."

Nor was it invention to attach the scoop rigidly to the lower end of the stick. We say this for two reasons. Downie was not the first to do it, and second, if he had been, it would not have been invention. Nor was it novel in machinery of this character to so arrange the parts that the shovel was an indigger instead of an outdigger. An automatic latch was a necessary part of a two part scoop. No claim defines a specific kind of a latch. Nor can novelty, surely not pat-

entable novelty, reside in the qualifying words, "Said bottom having earth entering teeth at the pivotal end." Downie was confronted by Clutter's discoveries, including the patent heretofore discussed. While not disposed to give the Clutter patent the status of a pioneer, there were specific disclosures therein made which anticipate much of what Downie claimed.

We hold the Downie claims in suit invalid.

As to the counterclaims, little need be said. They were not actually abandoned on the oral argument, although they were not pressed. In presenting them counsel evidently acted on the assumption that the more numerous and varied their defenses, the stronger the sum total of the opposition. However, the fact that nothing plus nothing is still nothing—though not startling—is most thoroughly established.

■ The original counterclaim of the Northwest Engineering Corporation failed to state a cause of action. The amendment added little to the original. In substance, it attempted to charge appellee with unfair trade methods because it charged appellant's customers with having infringed its patents. In view of the ruling of different courts to the effect that these patents were valid and were infringed by machines quite similar to the machines put out by said Northwest Engineering Corporation, it was strictly within its rights in the action it took.

■ The counterclaim of the Bucyrus-Erie Company is based upon the alleged infringement of claims 2, 3, 4, and 9 of the Morison patent, No. 1,249,805. The position taken by the Bucyrus-Erie Company in this respect has caused us some concern. Asserting as it does the validity of the four claims of the Morison patent, the question arises whether they do not impliedly admit the validity of the claims of the Downie patent. In L. P. Larson Jr. Co. v. Wm. Wrigley Jr. Co., 253 F. 914, this court construed the effect of admissions deliberately made by parties in their pleadings. If the introduction of any novel element into a combination spells invention, which is in substance the position which counsel for appellant Bucyrus-Erie Company takes, then it is not quite clear how validity of either the Downie or the Wagner patents may be denied. There is some difference between the facts in the instant case and those in L. P. Larson Jr. Co. v. Wm. Wrigley Jr. Co. Case. It is, however, not easy to sustain a plea of invalidity as against an infringer, who in the same case and almost in the same breath, argues for the validity of a narrower

patent by him owned. The prior art illustrated by the Clutter patent No. 1,317,431, applies to appellant Bucyrus-Erie Co. as well as to the Wagner and Downie.

In reaching our conclusions we have not overlooked the decisions of other courts on these same patents. We are not satisfied that the evidence was the same in the different trials. Moreover, the responsibility for a decision cannot be delegated nor can one court, much as it might desire so to do, accept such other decision when entertaining different views. What constitutes patentable novelty is an issue over which there can be, and often is, a contrariety of views. Each court must meet the question squarely and as intelligently as its understanding permits.

The decrees of the District Court are reversed, with directions to dismiss the complaints and the counterclaims. Each side will pay one-half of the costs in this court.