### MERCOID CORPORATION v. MILWAU-KEE GAS SPECIALTY CO.

#### No. 5293.

District Court, E. D. Wisconsin.

June 13, 1940.

Eugene C. Wann, of Milwaukee, Wis. (Langdon Moore, of Chicago, Ill., of counsel), for complainant.

Poss, Toellee & Schuler, of Milwaukee, Wis. (Brown, Jackson, Boettcher & Dienner, of Chicago, Ill., of counsel), for defendant.

DUFFY, District Judge.

Defendant was the owner of the original Leins Patent No. 1,958,482, issued May 15, 1934, covering a magnetic switch. The plaintiff is the manufacturer of a thermostatically actuated, magnetically operated electric switch, sold under the trade-mark "Sensatherm." On March 16, 1938, the defendant wrote to the plaintiff that the Mercoid catalogue sheets of August, 1935, show a Mercoid "Sensatherm" which employs Mercoid Switch No. 9–81, and was an infringement of Leins Patent No. 1,958,482, and that unless the manufacture of same was discontinued, suit would be commenced. On June 11, 1938, defendant notified plaintiff that unless plaintiff accepted a license under said patent, suit would be brought within ten days.

On June 13, 1938, plaintiff filed in this court its petition for a declaratory judgment alleging that the defendant had wrongfully charged the plaintiff with infringement of Patent No. 1,958,482, and asking for a decree adjudging that said patent is invalid and that the claims of said patent are not infringed by plaintiff's product, "Sensatherm." Defendant answered on August 5, 1938, which answer included a counterclaim alleging that plaintiff's device was an infringement under claims 10, 12, 13, 14, and 21 of said Leins Patent No. 1,958,482. Plaintiff replied to respondent's counterclaim on August 13, 1938. Thereafter, on March 28, 1939, the Leins Patent was reissued as Reissue Patent No. 21,038. This was granted on an application filed January 10, 1939. The plaintiff then filed a supplemental complaint, covering the reissue patent. The defendant filed an answer and a counterclaim in which the claim is made that plaintiff is infringing claims 10, 11, 12, 13, 14, 17, 18, 20, 21, and 24 of Letters Patent Reissue No. 21,038. The plaintiff replied to this counterclaim. Claims 10, 12, 13, 14, and 21 of the original patent

appear verbatim under the same numbers in the reissue patent. Claims 11, 17, 18, 20, and 24 have been rewritten. The specifications and the drawings of the original patent appear verbatim in the reissue patent.

In the year 1921, the predecessor of plaintiff began the use of "Mercoid" as a trademark for thermostatic circuit controlling devices. On January 1, 1932, plaintiff published a bulletin, "Announcing Mercoid Sensatherm." (Petitioner's Exhibit C.) Up to July 21, 1938, over 140,000 "Sensatherms" had been manufactured and sold, of which 1,200 were sold before July 28, 1932, the date of the application for Leins Patent No. 1,958,482. Plaintiff claims that in February, March, and May, 1934, defendant was on the mailing list and received Mercoid installation instructions, which illustrated and explained "Sensatherm." It is admitted that the defendant has never manufactured a switch in accordance with the Leins Patent.

The matter now before the court is based on three motions which have been made by the plaintiff. The first motion is, under Rule 12(b) (6), 28 U.S.C.A. following section 723c, that the defendant's counterclaim charging infringement of defendant's Reissue Patent No. 21,038, be dismissed on the ground that it fails to state a claim upon which relief can be granted. The plaintiff also moves, under Rule 12(c), for judgment on the pleadings. The third motion is under Rule 56(a) for a summary judgment.

The question of the validity of claims 10, 11, 12, 13, 14, 17, 18, 20, 21, and 24 of the reissue patent over the prior art is not before the court at this time.

The plaintiff contends that "Sensatherm" was constructed under McCabe Patent No. 1,975,856 and that Hunciker Patent No. 2,085,316 covers Mercoid Switch No. 9–81. Both of these patents were co-pending with the application for the original Leins Patent.

The plaintiff in its application for bills of particulars and by interrogatories made persistent efforts to require the defendant to point out in Mercoid Switch No. 9–81 wherein the contacts were carried by the leads and spaced apart from each other. It was after such efforts on plaintiff's part that the application was made for the reissue patent. When the defendant filed its counterclaim to the original complaint, it did not construe claims 11, 17, 18, 20, and 24 as readable upon Mercoid "Sensatherm" employing Switch No. 9–81.

An examination of the specifications and drawings, as well as the claims in the Leins Patent, clearly indicates that a metal to metal contact switch was in contemplation. When such metal contacts came together, the electric circuit would be closed.

In mercury tube switches the electrodes are not provided with contacts as such electrodes never engage each other and are fixedly spaced apart. The electric circuit is closed between the electrodes by the mercury fluid conductor flowing about the ends of the electrodes. When the switch tube is tilted, this causes the mercury to flow away from one electrode and the circuit is broken.

Commencing on line 24 of page 1 of the Leins original patent and also the reissue patent, the following appears: "The switch contacts are disposed within the tube, and are normally resiliently spaced apart, one of the contacts being supported on the free end of a leaf spring."

It seems clear that Leins intended the words "supported on" in the sense that one of the contacts is sustained on or carried by the free end of the leaf spring. This is borne out by the drawings.

In describing the switch, commencing on line 30 of page 2, the patent states: "The lead 11 is provided with a down-turned portion upon which a contact 13 is mounted * * *"

Again Leins uses the term "mounted" in the sense that it is supported by or carried by lead 11. Throughout the specifications, time after time, Leins describes the contacts as though they were metal plates, as would seem to be indicated by the drawings.

The accused device has a mercury tube switch and does not include a fixed contact on one of the leads and a movable contact spaced from the fixed contact and carried by the other of the said leads, as is disclosed in both the original Leins and in the reissue patents.

It is without dispute that the Mercoid "Sensatherm" employs a magnetically operated switch in which one lead is immersed in a pool of mercury when in operative position; that the pool of mercury is a fluid electrical connector to be engaged by and to flow about the other lead when it enters the pool of mercury to close the circuit through the switch, and to flow about and be disengaged by said other lead when it leaves the pool of mercury to open the circuit through the switch.

The medium through which electrical connection is made from one electrode to the other, is the pool of mercury. This mercury is not supported on either electrode, nor is it mounted on or carried by either of said electrodes.

The defendant contends that the patent should be construed by reference only to the claims. The correct rule was stated by our Supreme Court in Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, at page 432, 22 S.Ct. 698, at page 710, 46 L.Ed. 968, where the court said: "The claim of a patent must always be explained by and read in connection with the specification, * * *." Approved in American Fruit Growers, Inc. v. Brogdex Co., 283 U.S. 1, 6, 51 S.Ct. 328, 75 L.Ed. 801.

It was likewise stated in the case of Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 510, 37 S.Ct. 416, 418, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann.Cas.1918A: 959: "The scope of every patent is limited to the invention described in the claims contained in it, read in the light of the specification."

The entire instrument, including the drawings and specifications, should be considered in construing a patent. Horton Mfg. Co. v. White Lily Mfg. Co., 7 Cir., 213 F. 471.

The situation in this case is similar to that in Northwest Engineering Corp. v. Keystone Driller Co., 7 Cir., 70 F.2d 13, at page 15, where the court in an opinion by Judge Evans said: "The applicant was his own lexicographer. He described his invention. By his drawings, he amplified the meaning of the words by him adopted when he said, 'carried by the boom.' * * * Fairness to the public, as well as to the inventor, necessitates our giving the meaning to the language which he himself gave when he explained his invention to the examiner."

The accused device does not have a second contact on the end of a flexible lead or electrode. While the device does employ terminal leads or wire conductors, it does not have contacts at the end of the leads, as was contemplated by the Leins Patent. It is difficult to see how the defendant can attribute to the bare end of the electrode or lead, the properties of the pool of mercury as applied in the accused device.

As the defendant has never manufactured any switches under the original Leins Patent or under the reissue patent, the claims should be strictly construed. Standard Oil Co. v. Globe Oil & Refining Co., 7 Cir., 82 F.2d 488. Therefore claims 10, 12, 13, 14, and 21 of the reissue patent, which were copied verbatim under the same numbers as in the original Leins Patent, when thus construed, should be limited to contacts mounted on, supported by, or carried by the ends of the leads or electrodes. As to claims 11, 17, 18, 20, and 24, they cannot be given a broader scope than the scope of the original invention. The original patent cannot be interpreted to read upon a mercury tube switch which does not have contacts carried by the leads or electrodes.

Defendant contends that the rewritten claims in the reissue patent narrowed, rather than expanded, their scope. In a number of respects the new claims are more limited than those set forth in the original patent, but that fact is not necessarily controlling if, in other respects, the rewritten claims do contain new matter which in fact enlarges their scope. Fox Typewriter Co. v. Corona Typewriter Co., 6 Cir., 282 F. 502.

In considering the reissue statute (Sec. 4916, R.S.; U.S.C., Title 35, § 64, 35 U.S.C. A. § 64), it should be kept in mind that the application for Reissue Patent No. 21,038 was not made until four years and ten months after the date when the original patent was issued. A leading case interpreting the reissue statute is Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658, in which it is pointed out that the reissue must be for the same invention as the original patent, as such invention appears from the specifications and the claims of the original; that due diligence must have been exercised in discovering the mistake of the original patent; that if it is sought for the purpose of enlarging the claim, the lapse of two years will ordinarily be treated as evidence of an abandonment of the new matter; that the courts will not review the decision of the commissioner on the question of inadvertence, accident, or mistake unless the new matter is manifest from the record; but that the question of whether the application was made within a reasonable time in most cases is a question of law for the court. 145 U.S. at pages 170, 171, 12 S.Ct. 825, 36 L.Ed. 658.

After this action had been commenced and demands were made by the plaintiff for bills of particulars and for answers to interrogatories, the defendant undoubtedly

684

realized that the claims in the original patent could not be read upon a mercury tube switch which did not have contacts carried by electrodes or leads. An effort was made to expand some of the claims of the original patent so that it would be readable upon both contacts carried by the leads and also upon a mercury tube switch which employed a fluid connector instead of metal contacts. The oath accompanying the application for the reissue patent does mention limitations as to the thermally responsive magnetic means, but nothing is said and no mention is made of the change in the terminology which defined the construction of the switch mechanism, such as the means for making and breaking the circuit within the switch tube. To say that the various claims have been narrowed or limited is only telling part of the story. The definition of contacts in the reworded claims in the reissue patent has been broadened. It is persuasive that the defendant itself did not contend in this action that claims 11, 17, 18, 20, and 24 of the original patent were readable on Mercoid Switch No. 9–81, while claim of such infringement is made in the supplemental counterclaim which refers to the reissue patent.

The claims alleged to be infringed are combination claims, which combination consists of (1) a magnetically operable switch; (2) magnetic means for operating the switch; and (3) thermally responsive means for actuating the magnetic operating means. The new claims are a limitation upon the second and third elements of the combination; but the changed terminolgy in defining the switch has been broadened.

The rewritten claims in the reissue patent now read upon the accused device. It is clear that these claims have been expanded in their scope. The reissue patent was applied for more than two years after the date of the grant of the original patent.

There was no mistake in the wording of the claims of the original patent. The reissue was undoubtedly for the purpose of enlarging the claims, although in a number of respects they were limited. The reissue was not for the benefit of the original patentee, but for the benefit of the defendant, his assignee. The Supreme Court in the case of Mahn v. Harwood, 112 U.S. 354, at pages 359, 360, 5 S.Ct. 174, at page 177, 28 L.Ed. 665, said: "Now, in our judgment, a patent for an invention cannot lawfully be reissued for the mere purpose of enlarging the claim, unless there has been a clear mistake inadvertently committed in the wording of the claim, and the application for a reissue is made within a reasonably short period after the original patent was granted."

In view of the foregoing, it is considered that claims 11, 17, 18, 20, and 24 of Reissue Patent No. 21,038 are void. Therefore the motion of the plaintiff to dismiss the counterclaim of the defendant will be granted, and likewise its motion for judgment.